IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                2:21-CR-1827-DHU

SHAWN MICHAEL NORTON,

    Defendant.

**ORDER REGARDING SUPPLEMENTAL BRIEFING**

This matter is before the Court on an *Opposed Motion to Suppress Evidence by Shawn Michael Norton*, Doc. 97. For the reasons set forth below, the Court now orders supplemental briefing.

On November 16, 2023, this Court held a *Franks* hearing to determine whether the affiant who submitted the search warrant for Mr. Norton's DNA, Agent Bryan Acee, knowingly and intentionally or with reckless disregard for the truth, made a false statement in the affidavit.[1] The Court heard testimony from Chief Clarence Romero (the witness quoted in the warrant affidavit), District Attorney Thomas Clayton, and Agent Acee. By the end of the hearing, there was clearly a shift in the focus of the *Franks* analysis. Agent Acee testified that once he had access to other recordings of Mr. Romero's interview and testimonies about what he saw the night of Mr. Norton's arrest, he began to question the veracity of what Mr. Romero told him in their interview on November 2, 2021.[2] In particular, Agent Acee outlined the following inconsistency: Mr. Romero told him that he saw Ms. Perez place something in her black purse, but Mr. Romero never mentions

---

[1] This is the standard set forth in *Franks v. Delaware,* 438 U.S. 154, 155-6, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).
[2] This interview was the information used by Agent Acee in the warrant affidavit. *See,* United States Resp. at 6, Doc. 108.

seeing that action or that purse in the three other times Mr. Romero gave an interview or testimony regarding this incident.[3] Agent Acee testified that he "found it [Mr. Romero's other testimony] to be quite different."[4]

Following this testimony, which presented new information about the black purse to the parties and to the Court, Defendant shifted his argument to focus on the veracity of Mr. Romero's statements which were represented in the affidavit, rather than Agent Acee's veracity. Defendant went on to cite various case law to support the position that a government employee witness who made false statements to an innocent affiant could be the basis of a *Franks* violation, when a private citizen giving the same false statement could not be the basis of a *Franks* violation.[5] While these issues were given cursory attention in the original pleadings, they have not been briefed in full nor applied to Mr. Romero's testimony or comments.

The Court has done some initial research on this issue to ensure that briefing is efficient and expedited. That research will be summarized here. In *Franks v. Delaware*, the Supreme Court established the concept that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks v. Delaware*, 438 U.S. 154, 164, n. 6, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).[6] The Tenth Circuit applied this

---

[3] These three other occurrences are the body camera interview he gave to the arresting officers, Def.'s Mot. Supp., Doc. 97, Exhibit A; the state court hearing testimony, *Id.,* Exhibit E; and the testimony Mr. Romero gave to this Court at the November 16, 2023 hearing.

[4] Mot. Hr'g Tr., November 16, 2023 at 52:23-24. This Order cites to the court reporter's unofficial transcript. All page citations are subject to change on the official edited version of the transcript.

[5] Defendant cited *Marin v. King,* 720 Fed.Appx. 923 (10th Cir. 2018); *United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997); and *United States v. Thompson*, 690 F.3d 977 (8th Cir. 2012).

[6] In *Franks* the Court believed that this premise was established in *Rugendorf v. United States*, 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887 (1964), in which the Court implied that it would have allowed argument considering the integrity of the officer witness who informed the officer-affiant.

doctrine in *United States v. Kennedy,* in which they held: "We agree with the decision of the district court to hold the government accountable for statements made not only by the affiant but also for statements made by other <u>government employees</u> which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (emphasis added).[7] The Tenth circuit reaffirmed this doctrine in *Montoya v. City and County of Denver*:

> Contrary to the officers' contentions, it is well established "Franks is not limited to false representations made by the affiant himself." *Marin v. King,* 720 F. App'x 923, 936 (10th Cir. 2018). As Mr. Montoya maintains on appeal, *Franks* itself recognized "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." 438 U.S. at 163 n.6. Thus, we "hold the government accountable for statements made not only by the affiant but also for statements made by other government employees which were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citations omitted). The notion that officers who allegedly manufactured the false evidence somehow did not participate in *Franks* violation is meritless.

*Montoya v. City and County of Denver*, No. 21-1107, 2022 WL 1837828 (10th Cir. June 3, 2022). This restatement of Supreme Court and Tenth Circuit precedent makes clear that the government is not permitted to admit evidence obtained via a warrant that contained a *Franks* violation, even

---

[7] Various other circuits have affirmed this principle, at times even citing the Tenth Circuit's *Kennedy* opinion. *See United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (holding that a deliberate or reckless omission by an informant can serve as grounds for a *Franks* violation where the informant is a government official); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992) ("misstatements or omissions of government officials [who are not the affiant] which are incorporated in an affidavit for a search warrant are grounds for a *Franks* hearing, even if the official at fault is not the affiant"); *United States v. Calisto*, 838 F.2d 711, 714 (3d Cir. 1988) ("If we held that the conduct of [the affiant] was the only relevant conduct for the purpose of applying the teachings of *Franks*, we would place the privacy rights protected by that case in serious jeopardy."); *United States v. Pritchard*, 745 F.2d 1112, 1118 (7th Cir. 1984) (stating that *Franks* applies when "one government agent deliberately or recklessly misrepresents information to a second agent, who then innocently includes the misrepresentations in an affidavit").

if the affiant was unaware that they were including such a violation. Instead, a "government employee" witness who recklessly or intentionally provides false information to an affiant, can create the basis of a *Franks* violation if that information was material to a finding of probable cause.

This issue, of who definitionally is a government employee, has not been addressed explicitly in this context by the Tenth Circuit. However, in *Marin v. King,* 720 Fed.Appx. 923 (2018), while reviewing an appeal of a Section 1983 case regarding a potential *Franks* violation, the Tenth Circuit delved into what kind of factors could be used to determine if someone is a government employee. Among the factors considered, the Tenth Circuit questions whether these individuals are "employed or paid by any government entity" and whether they have "any law enforcement training or training regarding constitutional rights," and thus whether they could recognize that they were "violating … constitutional rights by making knowingly and intentionally or recklessly false statements." *Id.* at 938.[8]

Again, the question of whether it matters if the officers (the affiant and witness) are from the same jurisdiction or police force has not been explicitly addressed by the Tenth Circuit. However, there are various cases in which the Tenth Circuit and other courts found that officers

---

[8] The plaintiffs in *Marin* were attempting to prove that the relevant witnesses were liable for providing false statements in a warrant affidavit because though they were volunteers, they were actually "law enforcement officers." The Tenth Circuit seems to accept the notion that law enforcement officers are government employees, as they engage in a lengthy analysis of who could be considered a law enforcement officer: "a full-time salaried public employee of a governmental entity…whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes." *Id.* This is distinguished by the Tenth Circuit from cases in which individuals were found to *not* be law enforcement officers. *See Dunn v. McFely,* 127 N.M. 513, 984 P.2d 760, 766-67 (1999) (holding that medical investigator and crime laboratory technician are not 'law enforcement officers.'); *Abalos v. Bernalillo Cty. Dist. Attorney's Office*, 105 N.M. 554, 734 P.2d 794, 800-1 (holding that the district attorney and staff at the office do not qualify as law enforcement officers).

who were from different divisions, even different states, could be held responsible under a *Franks* analysis. *See United States v. Garcia-Zambrano*, 530 F.3d 1249 (10th Cir. 2008) (concerning a witness who was an off-duty officer working as a security guard in an apartment complex); *United States v. Lakoskey*, 462 F.3d 965, 978 (8th Cir. 2006) (concerning an inspector from Arizona who gave potentially misleading information to an FBI agent in Minnesota), *as amended on reh'g* (Oct. 31, 2006); *Auguste v. Sullivan*, No. CIVA03CV02256PABKLM, 2009 WL 902385, at *13 (D. Colo. Mar. 26, 2009) (a case where a Colorado officer was relying on information given to him by a California officer); *United States v. Barthelman*, No. CRIM.A. 13-10016-MLB, 2013 WL 3946084 (D. Kan. July 31, 2013) (a case where the information was passed between officers located in Ohio and then in Kansas).

Concerning the more specific question of whether a campus police officer can be considered a "government employee," the Court has found a few relevant lines of doctrine. First, Courts generally consider public universities to be government entities, at least when they analyze that question as it relates to issues of sovereign immunity or constitutional rights. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001); *Gaspar v. Bruton*, 513 F.2d 843 (10th Cir. 1975).[9] Second, Courts also have found that campus police officers are state actors. *See Henderson v. Fisher*, 631 F.2d 1115 (3d Cir. 1980) (finding that campus police officers at a public university operate under color of state law and therefore are subject to Section 1983 claims); *see also Smyth v. Lubbers*, 398 F. Supp. 777 (W.D. Mich. 1975).

---

[9] *See also Lee v. Univ. of New Mexico*, 449 F. Supp. 3d 1071 (D.N.M. 2020). *See also, Sussman v. Weber State Univ., N*o. 2:16-CV-1119-TC, 2017 WL 706191 (D. Utah Feb. 22, 2017); *see also Caldwell v. Univ. of New Mexico Bd. of Regents*, No. CIV 20-0003 JB/JFR, 2023 WL 4236016 (D.N.M. June 28, 2023) for district court cases in the Tenth Circuit.

Campus police are expected to abide by the Fourth Amendment and by warrant procedures. *See Eng. v. Univ. of Tulsa*, No. 14-CV-0284-CVE-FHM, 2015 WL 4623942 (N.D. Okla. Aug. 3, 2015); *Halik v. Pinnock*, No. 21-CV-02456-RM-MDB, 2022 WL 4079338 (D. Colo. Sept. 2, 2022), *report and recommendation adopted,* No. 21-CV-02456-RM-MDB, 2022 WL 4356893 (D. Colo. Sept. 20, 2022); *See also Marshall v. State ex rel. Dep't of Transp.*, 941 P.2d 42, 45 (Wyo. 1997) (holding "a campus police officer acting without a warrant may not lawfully arrest an individual for DWUI outside the boundaries of the campus he serves, unless such arrest is the result of fresh pursuit.").

Given that the parties have not had a full opportunity to brief these issues to the Court, the Court finds it appropriate to order briefing so that it can determine the parties' positions on this case law and any other law the parties wish to bring to the Court's attention. In particular, the Court orders the parties to brief the following issues:

(1) Does the evidence in the record – body camera footage, hearing testimony, and interview notes – establish whether or not Mr. Romero deliberately or recklessly made false or misleading statements, and if so, were those statements material to a finding of probable cause?
(2) Is Mr. Romero a "government employee" under the standards set forth in *Kennedy* and other Tenth Circuit cases?
(3) Does it matter that he is a chief of campus police and outside of Agent Acee's law enforcement agency?
(4) If the Court were to find that there was a *Franks* violation, what would be the appropriate remedy given that there was a second warrant issued?

**IT IS THEREFORE ORDERED** that the parties submit simultaneous briefing by December 15, 2023, so that this Court may make an informed decision on Defendant's motion to suppress.

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE